STATE EX REL. DONALD G. McGREGOR v. DOUGLAS C. RIGG.

109 N. W. (2d) 310.

May 5, 1961—No. 38,166.

*Donald G. McGregor,* pro se, for appellant.

*Walter F. Mondale,* Attorney General, and *Charles E. Houston,* Solicitor General, for respondent, warden of Minnesota State Prison.

THOMAS GALLAGHER, JUSTICE.

Petition for writ of habeas corpus directed to the warden of the Minnesota State Prison on the grounds that relator is unlawfully imprisoned because:

(1) Minn. St. 618.18[1] under which he was convicted is contrary to

---

[1]Minn. St. 618.18 provides in part: "No person shall obtain or attempt to

the provisions of Minn. Const. art. 1, § 7, (due process clause) and art. 4, § 27,[2] and U. S. Const. Amend. XIV, § 1, (the Federal due process clause) in that its title "Restrictions on obtaining drugs" is ambiguous and misleading and fails to explain the subject matter of the section; and in that the statute embraces more than one subject and defines more than one crime;

(2) He was denied a speedy trial.

In his briefs submitted on appeal relator also contends that (1) he was not adequately represented by counsel; (2) the information under which he was charged was defective; and (3) § 618.23[3] renders c. 618 invalid because the words limiting its application to "any citizen of this state" are discriminatory and in conflict with the equal protection clause of the Federal constitution.

Relator was arrested October 20, 1958. On October 27, 1958, he was given a preliminary hearing in municipal court in Minneapolis. Later on that same date, he was arraigned in District Court of Hennepin County upon an information then read to him, of which a copy was then delivered to him, and which charged:

"* * * that DONALD GERALD MCGREGOR committed the crime of ATTEMPT TO OBTAIN A NARCOTIC DRUG BY FRAUD (Sec. 618.18) as follows, to-wit:

"The said Donald Gerald McGregor on or about the 20th day of

---

obtain a narcotic drug, or procure or attempt to procure the administration of a narcotic drug, (a) by fraud, deceit, misrepresentation, or subterfuge; or (b) by the forgery or alteration of a prescription or of any written order; or (c) by the concealment of a material fact; or (d) by the use of a false name or the giving of a false address."

[2] Minn. Const. art. 4, § 27, provides: "No law shall embrace more than one subject, which shall be expressed in its title."

[3] Minn. St. 618.23 provides: "If any provision of this chapter * * * is held invalid, such invalidity shall not affect other provisions * * * of the chapter which can be given effect without the invalid provision * * * and to this end the provisions of this chapter are declared to be severable, and nothing in this chapter may be construed into placing any citizen of this state in double jeopardy, either state or federal, for the same offense."

October A. D. 1958, at the Village of Osseo in said Hennepin County, Minnesota, then and there being, did wilfully, unlawfully, wrongfully, knowingly and feloniously attempt to obtain a narcotic drug, to-wit: a quantity of demerol tablets from T. J. Bloedel, a duly and regularly licensed and acting physician in the Village of Osseo, Hennepin County, State of Minnesota, by, through and by means of fraud, deceit, misrepresentation, and subterfuge in that the said Donald Gerald McGregor falsely stated and represented himself to be and assumed the title of physician to the said T. J. Bloedel, and represented that he then resided at Box 263, Alma, Georgia, whereas in truth and in fact, said statements, representations so made were wholly false and untrue as he, the said Donald Gerald McGregor, then and there well knew, in that the said Donald Gerald McGregor is not a physician and that the address at said time given of Box 263, Alma, Georgia, was a false address."

After the information was read, relator advised the court that he had no attorney. A plea of not guilty was entered for him and the court ordered that his case be referred to the public defender. The information, which was dated October 24, 1958, was filed October 27, 1958.

Trial was set for October 30, 1958, at 9 a. m. On October 28, 1958, however, relator appeared in court with Mr. Lewis Lohmann, attorney and public defender, as his counsel at which time the following occurred:

"MR. JONES [attorney for the state]: Donald McGregor. I understand from counsel that Mr. McGregor wishes to withdraw his plea of not guilty as previously entered and enter a plea of guilty as charged to the felony of attempting to obtain a narcotic drug by fraud.

"MR. BROWN, the clerk: That is your desire at this time?

"THE DEFENDANT: That is my desire.

"MR. BROWN: To withdraw your plea of not guilty and enter a plea of guilty as charged?

"THE DEFENDANT: Yes."

Relator was then duly sworn and testified as follows upon questioning by Mr. Lohmann:

"Q You and I discussed this charge of attempting to obtain a narcotic drug by fraud, did we not?

"A We did, sir.

"Q And you are aware that the penalty for that offense in the first instance could be two and a half to ten years in a penal institution, are you?

"A I understand it now.

\* \* \* \* \*

"Q By reason of your prior conviction I advised you, as I did before, it could be doubled and could be five to twenty?

"A I understand.

"Q I made you no promises of any kind to induce you to make this plea, nor did I threaten you in any way.

"A No.

"Q Did anyone else?

"A No.

"Q You make it of your own freewill?

"A I do."

On December 8, 1958, after the court received a report from the Department of Court Services, the following proceedings, at which relator was present, occurred:

"THE COURT: There isn't anything I can do for you under the circumstances. I will have to send you to Stillwater and let them determine what the trouble is.

"MR. LOHMANN: Before the Court passes sentence, I assume that the sentence could be limited anywhere from two and a half to seven years.

"THE COURT: I am not going to limit it; I am going to leave it to the authorities at Stillwater. \* \* \* it is the judgment of this Court that you, Donald Gerald McGregor, for the crime of attempting to obtain a narcotic drug by fraud, be sentenced to the State's Prison at Stillwater until duly discharged by law. \* \* \*

\* \* \* \* \*

"It's been called to this Court's attention that there is an ambiguity in the law, and it's both counsels' opinion that this should be for seven years, but the ambiguity is such they are not sure, so I will state in the record, Mr. McGregor, that you are to be sentenced to the State Prison at Stillwater for a period of not to exceed seven years."

The District Court of Washington County determined that the petition for the writ of habeas corpus was without merit and denied it.

■ We are of the opinion that the order appealed from must be affirmed. Relator's contention that § 618.18 is unconstitutional because of its subtitle or headnote—"RESTRICTIONS ON OBTAINING DRUGS"—is without merit. The title of c. 618 of which § 618.18 is a subdivision is "OFFENSES RELATING TO NARCOTICS." This chapter, which is modeled after the Uniform Narcotic Drug Act, defines *isonipecaine,* for which *demerol* is a trade name, as a narcotic drug.[4] The headnote for § 618.18 as above set forth is not a part of this legislative enactment. It was inserted under the provisions of Mason St. 1927, § 5681, by the secretary of state and cannot be given consideration in determining legislative intent or in any construction relative to the meaning and intent of c. 618. State ex rel. Greenberg v. Erickson, 159 Minn. 287, 198 N. W. 1000; see, also, In re Dissolution of School Dist. No. 33, 239 Minn. 439, 60 N. W. (2d) 60.

■ The title of this chapter when it was enacted (L. 1937, c. 74) in our judgment was well within the requirements of Minn. Const. art. 4, § 27. This section of the constitution is designed to prevent deception as to the nature or *subject* of legislative enactments. The term *subject* as used therein should be given a broad and comprehensive meaning to permit inclusion within an act of all provisions germane or auxiliary to it. Blanton v. N. P. Ry. Co. 215 Minn. 442, 10 N. W.

---

[4]Minn. St. 618.01, subd. 14, as amended by L. 1949, c. 360, § 1, and L. 1953, c. 431, § 1, provides: " 'Narcotic drugs' means coca leaves, opium, cannabis, isonipecaine, * * * and every other substance neither chemically nor physically distinguishable from them; * * *." Subd. 15 provides: " 'Isonipecaine' means the substance identified chemically as 1-methyl-4-phenyl-piperidrine-4-carboxylic acid ethyl ester, or any salt thereof by whatever trade name identified." Judicial notice is taken that demerol is a trade name for isonipecaine.

(2d) 382. All that is necessary to establish compliance with this constitutional provision is that a statute must embrace one general subject under which all matters treated therein would logically fall. C. Thomas Stores Sales System, Inc. v. Spaeth, 209 Minn. 504, 297 N. W. 9. Here the title to L. 1937, c. 74,[5] embraced the general subject of narcotic offenses. Thereunder, there would logically fall the restrictions of § 618.18 against obtaining narcotics by "fraud, deceit, misrepresentation, or subterfuge; or * * * (d) by the use of a false name or the giving of a false address."

■ On appeal for the first time relator urges that after his arrest on October 20, 1958, the failure to bring him to trial before October 27, 1958, constituted a violation of his constitutional right to a speedy trial.[6] Prior hereto no objection was ever made to this brief delay or to the procedure followed. No demand was ever made for a hearing more speedy than that accorded relator. Even could the delay described be regarded as a denial of his constitutional right in this respect, it is well settled that the failure to demand exercise of the right will constitute a waiver thereof. State v. Dehler, 257 Minn. 549, 102 N. W. (2d) 696; State ex rel. Rajala v. Rigg, 257 Minn. 372, 101 N. W. (2d) 608; State v. McTague, 173 Minn. 153, 216 N. W. 787.

■ Likewise, for the first time on appeal relator asserts that the information under which he was convicted was defective because it was dated prior to his arraignment and because the county attorney's name thereon had been signed by someone with the initials "C. B." acting on his behalf. Neither of these alleged defects would be sufficient to establish that the court was without jurisdiction either as to the subject matter of the case or the person of relator. Section 628.31, which relates to filing of informations, does not require that an information be

---

[5]The title of L. 1937, c. 74, was "An act defining and relating to narcotic drugs, to make uniform the law with reference thereto and repealing Mason's Minnesota Statutes of 1927, Sections 10453, 10454, 10455, 10455-1, 10455-2, and 10455-3, and all acts amendatory thereof and supplemental thereto, except Chapter 321, Session Laws of 1935, together with all other acts and parts of acts inconsistent herewith."

[6]Minn. Const. art. 1, § 6, provides: "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial, * * *."

dated subsequent to the arraignment. It specifies: "No information shall be *filed* against any person for any offense until such person shall have had a preliminary examination as provided by law, * * *." . (Italics supplied.) Here, it is conceded that relator did have a preliminary hearing in municipal court on October 27, 1958, and that later that day he was arraigned in district court. At the arraignment the information was read and a copy thereof delivered to him. The information was filed October 27, 1958, and it is only fair to assume that this was subsequent to the arraignment in accordance with ordinary practice. Nothing in such procedure was violative of § 628.31. The fact that the information was *dated* October 24, 1958, would not constitute a defect or imperfection sufficient to oust the court of jurisdiction under § 628.19[7] and consequently would not form a sufficient basis for an attack under a petition for a writ of habeas corpus. State v. Mancino, 257 Minn. 580, 102 N. W. (2d) 504; State ex rel. Naus v. Rigg, 250 Minn. 365, 84 N. W. (2d) 698, certiorari denied, 355 U. S. 884, 78 S. Ct. 153, 2 L. ed. (2d) 114.

■ As to the mode adopted for subscribing the information, we find nothing in the statutes relating thereto (§§ 628.29 to 628.33, inclusive) which requires that the county attorney's name be personally subscribed thereon. Section 628.33, which sets forth the statutory form for informations, provides a blank line under which the words "county attorney" appear, but there is nothing therein which requires that this line be filled with the *written signature* of the official described.

In Herrick v. Morrill, 37 Minn. 250, 33 N. W. 849, where a statute then in effect provided that summons in civil actions be *subscribed* by plaintiff or his attorney, a judgment was attacked because the summons initiating the proceeding had the printed but not the written names of the plaintiff's attorneys affixed. There this court stated (37 Minn. 252, 33 N. W. 850):

"* * * This [the decision in Hotchkiss v. Cutting, 14 Minn. 408

---

[7]Minn. St. 628.19 provides in part: "No indictment shall be insufficient, nor shall the trial, judgment, or other proceedings thereon be affected, by reason of a defect or imperfection in matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

(537)] does away with the necessity of a signature in the proper handwriting of the party or his attorney, and it logically follows that there need be no written signature at all; that any signature, whether written, printed, or lithographed, which the party issuing the summons may adopt as his own, will be sufficient. * * * The decision in Ames v. Schurmeier [9 Minn. 206 (221)] seems to have been made upon the erroneous assumption that 'subscribed' meant a 'written signature,' and that the statute defining the meaning of the words 'written signature' applied to the construction of the statute requiring the summons to be 'subscribed.' "

There, it was further held that, if a written signature had been required, a failure to provide it constituted at most a defect to be taken advantage of in the action and not to be made the basis of a collateral attack upon the judgment obtained therein.

In 27 Am. Jur., Indictments and Informations, § 45, it is stated:

"* * * It is commonly held that a typewritten or printed signature of the prosecuting attorney is sufficient, or at least, does not invalidate the information."

In Annotation, 30 A. L. R. 700, 703, on formality in authentication of judicial acts, it is stated:

"The courts seem to be generally in accord in holding that a printed or stamped signature of the judge or court officer issuing an order or writ is a sufficient authentication, fulfilling the requirement of a signature, where such signature has, in effect, been adopted by the issuing officer."

Citing Miller v. State, 36 Tex. Cr. 47, 35 S. W. 391; Hagen v. Gresby, 34 N. D. 349, 159 N. W. 3, L. R. A. 1917B, 281; Mezchen v. More, 54 Wis. 214, 11 N. W. 534; Ligare v. California S. R. Co. 76 Cal. 610, 18 P. 777; Almond v. People, 55 Colo. 425, 135 P. 783. See, also, West v. St. Paul & N. P. Ry. Co. 40 Minn. 189, 41 N. W. 1031.

In the instant case since there is no statute requiring that the information be subscribed with the written signature of the county attorney; since it is clear that in proceeding under the information the county attorney adopted the signature thereon as his own; and since

relator raised no objection thereto at any stage of the proceedings relative to his conviction and sentencing thereunder, we hold that the signature described was sufficient and that the information in the form submitted conferred jurisdiction upon the court. It would follow that relator's conviction, sentence, and imprisonment thereunder are in all respects valid.

■  Relator's other contentions are without merit. The record indicates that he was given careful representation by the Hennepin County public defender who is competent and experienced in this field; that he was advised by such counsel as to his rights and as to the penalties involved; and that with all such information he elected to enter his plea of guilty. See, State ex rel. May v. Swenson, 242 Minn. 570, 65 N. W. (2d) 657.

The contention that the provision in § 618.23, that nothing in c. 618 may be construed to place any citizen of the state in double jeopardy, renders the chapter invalid under the equal protection clause of the Federal constitution is likewise without merit. Under the separability provision of § 618.23, if the above provision were invalid, this would not affect the validity of the remainder of c. 618, including § 618.18, under which relator was convicted and sentenced. 17 Dunnell, Dig. (3 ed.) § 8936; State v. Phillips, 176 Minn. 472, 223 N. W. 912; Mesaba Loan Co. v. Sher, 203 Minn. 589, 282 N. W. 823.

Affirmed.

MR. JUSTICE OTIS, not having been a member of the court at the time of the submission, took no part in the consideration or decision of this case.